**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **PATRICIA CRUMLEY, Individually** | : | |
| **and as Executor of the Estate of** | : | |
| **ROBERT L. CRUMLEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION NO.** 5:10-cv-143 |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## COMPLAINT

Plaintiff Patricia Crumley, Individually and as Executor of the Estate of

Robert L. Crumley, for her Complaint against the United States of America, alleges

and states as follows:

## PARTIES, JURISDICTION AND VENUE

1.

Patricia Crumley is the widow of Robert L. Crumley.  Mr. and Mrs. Crumley

were married November 15, 1986.  She is also the Executor of the Estate of Robert

L. Crumley.

2.

This is an action brought pursuant to the Federal Tort Claims Act.  Mrs.

Crumley's claims were timely presented to the United States Air Force.  The Air

Force denied Mrs. Crumley's claims by letter dated March 23, 2010.  A copy of this

letter is attached as Exhibit "A."  Therefore, this action is timely commenced.

3.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1346(b) (Federal Tort Claims Act).

4.

The acts and omissions that are the subject of this action occurred in Houston County, Georgia and therefore venue is appropriate pursuant to 28 U.S.C. § 1402(b).

## FACTUAL ALLEGATIONS

5.

Robert L. Crumley retired as a Gunnery Sergeant from the United States Marine Corps in 2001 after serving twenty years as a Marine.

6.

After his retirement, and because he was a veteran, Mr. Crumley received his primary medical care at Robins Air Force Base from the  Medical Group.

7.

At all relevant times, the Air Force, as documented in DD Form 2766, required prostate screening examinations with physical examinations for males 40 years and older.

8.

On October 27, 2003, Dr. Walisa Maynard, a physician at the  Medical Group's Family Practice Clinic, performed a physical examination on Mr. Crumley. As a required and routine part of that physical, Dr. Maynard screened Mr. Crumley

for prostate cancer by ordering a prostate specific antigen (PSA) test.  However, Dr. Maynard did not perform a digital rectal exam.

9.

The result of the PSA test was returned to Dr. Maynard and the  Medical Group on October 30, 2003.  As documented in Mr. Crumley's chart, the result was 4.79 ng/ml.  The normal reference for a man of Mr. Crumley's age for the laboratory performing the test was less than 2.5 ng/ml.

10.

Mr. Crumley returned to the  Medical Group Family Practice Clinic on November 10, 2003 for a follow-up appointment.  Although Dr. Maynard and the Medical Group had the elevated PSA test result, she took no action in response to the test result.  Neither did she advise Mr. Crumley that the PSA test was elevated. Neither did Dr. Maynard perform a digital rectal examination.  Neither did she refer Mr. Crumley to a urologist or other specialist.

11.

On December 10, 2004, Mr. Crumley returned to the  Medical Group Family Practice Clinic for a routine physical, which was performed by Dr. Mohammad Fuad.  Dr. Fuad did not perform a digital rectal examination.  However, Dr. Fuad wrote that he ordered a PSA test, demonstrating clearly his knowledge that a prostate screening examination was necessary.  However, there is no record that Dr. Fuad actually ordered the test and no PSA test was performed.  Nevertheless, Dr. Fuad had available to him the abnormally high result of the 2003 PSA test ordered by Dr. Maynard.  Still, Dr. Fuad took no action.

3

12.

Mr. Crumley was seen in the  Medical Group Family Practice Clinic on at least two occasions in 2005 and his records document a physical examination on August 29, 2005.  Although the DD Form 2766 appears to document that a prostate screening examination was performed during the August 29, 2005 examination, no such examination, in fact, took place.  Specifically, there was no digital rectal examination and there was no PSA test.  However, the abnormally high 2003 PSA test result was available to Mr. Crumley's providers during the 2005 visits.  The providers did not refer Mr. Crumley to a urologist.

13.

On November 21, 2006, Mr. Crumley, then age 50, returned to the Family Practice Clinic for a "normal routine history and physical" by Kathleen French.  The DD Form 2766 again suggests that a prostate screening examination was performed.  However, there was no digital rectal examination and Ms. French did not order a PSA test.  Incredibly, and tragically, Ms. French recorded in her notes the abnormally high 2003 PSA test result.  Yet, she still took no action with regard to screening Mr. Crumley for prostate cancer.  Neither did she take any action in response to the elevated 2003 PSA test, nor did she refer Mr. Crumley to a urologist.

14.

In late 2008, Mr. Crumley began experiencing various orthopedic complaints. On December 16, 2008, he returned to the Family Practice Clinic.  An x-ray revealed "numerous sclerotic foci of varying sizes scattered throughout the pelvis

4

and proximal femurs."  The radiologist recommended a nuclear medicine bone scan.

15.

The bone scan was performed December 24, 2008 at Houston Medical Center and it revealed "widespread osteoblastic metastatic disease."  The radiologist warned that "prostate cancer can have this appearance."  A PSA test performed that same day yielded a result of 2721 ng/ml.

16.

On January 22, 2009, Mr. Crumley's oncologist confirmed that he was suffering from Stage IV prostate cancer with metastases to bone and lymph nodes.

17.

Although Mr. Crumley's physicians commenced treatment to improve the quality of his remaining life, he quickly deteriorated.  The widespread bone metastases caused spinal cord compression, which in turn caused intense pain and dysfunction.  On May 29, 2009 Mr. Crumley underwent lumbar spine surgery. Unfortunately, this surgery provided only temporary relief.  By early June, his low back and bilateral hip pain had returned.  His legs had become "dead meat," and he became incontinent.  On July 6, 2009, he was admitted to the Medical Center of Central Georgia with a diagnosis of cauda equina syndrome from progressive prostate cancer and he again underwent back surgery.  During that hospitalization, new liver metastases were discovered.

18.

Mr. Crumley steadily deteriorated and he died painfully on August 9, 2009. The picture below demonstrates the horror of his ordeal.



19.

As alleged herein, various personnel at the Family Practice Clinic, beginning with Dr. Walisa Maynard, were negligent in their care and treatment of Mr. Crumley.

20.

As a proximate result of the negligence of Robins Air Force Base personnel, Mr. Crumley was injured, suffered severe physical and mental pain and suffering and, eventually, died.

21.

As a further proximate result of the negligence of Robins Air Force Base personnel, Mr. Crumley and his Estate incurred medical, funeral, burial, and other expenses.  Mr. Crumley's medical expenses are in excess of $197,057.21.  His funeral and burial expenses total $10,461.94.

22.

As a further proximate result of the negligence of Robins Air Force Base personnel, Mr. Crumley was deprived of his wages and suffered other economic damages.  The economic damages total at least $1,226,921.00.

23.

As a further proximate result of the negligence of Robins Air Force Base personnel, Mrs. Crumley suffered the loss of her husband's companionship, services, and consortium.

24.

The United States of America is liable for the injuries, death, and damages suffered and incurred as a result of its conduct.

25.

Although not necessary, attached hereto as Exhibit "B" is an affidavit of Arthur W. Browning, Jr., M.D. setting forth at least one negligent act or omission claimed to exist and the factual basis for each such claim.

WHEREFORE, Patricia Crumley, Individually and as Executor of the Estate of Robert L. Crumley prays as follows:

a)    That judgment be entered against Defendant in an amount sufficient to compensate for the special and general damages occurred as the result of Mr. Crumley's injuries and death;

b)    That judgment be entered against Defendant for the full value of Mr. Crumley's life;

7

c)      That judgment be entered against Defendant in an amount sufficient to compensate for Mrs. Crumley's loss of consortium;

d)      That the costs of this action be taxed against Defendant; and

e)      That Plaintiff have such other and further relief as the Court deems appropriate under the circumstances.

This ___ day of March, 2010.

 /s/ Marc T. Treadwell
Marc T. Treadwell
Georgia Bar No. 716239

ADAMS, JORDAN & TREADWELL, P.C.
Fickling & Co. Building
577 Mulberry Street, Suite 1250
P.O. Box 928
Macon, GA  31202-0928
(478) 743-2159

 /s/ Thomas H. Hinson, II
Thomas H. Hinson, II
Georgia Bar No. 356850

WESTMORELAND, PATTERSON, MOSELEY
    & HINSON, LLP
577 Mulberry Street, Suite 600
P.O. Box 1797
Macon, GA  31202-1797
(478) 845-1742